Good morning, Your Honors. I'm Zachary Nightingale. With me at council table are Co-Counsel Mark Vanderhout and Stacey Tolchin. This case involves an individual who was a lawful permanent resident since the age of two months. He was born prematurely while his mother was visiting Mexico. The rest of his family, his father, his three siblings, his three children are all United States citizens. He was deported initially based on a single conviction for possession of a controlled substance and following the deportation order and the deportation, that conviction was vacated on its merits based on ineffective assistance of his prior criminal defense counsel. Even the prosecutor in the criminal case conceded to the vacature that it was an invalid conviction. Following the vacature of the conviction, petitioner filed a motion to reopen with the court who initially ordered him deported based on this court's decisions in Estrada, Rosales and Widersberg. Even though he had been physically deported already at that time, this court's decisions in those two cases held that where that deportation was invalid because it was based on an invalid conviction, the fact that the deportation had physically occurred doesn't bar reopening. The regulation that says you can't reopen after you've been deported only applies to valid deportations. What order are you, I'm sorry, what order are you asking us to review? I'm asking that the denial of the motion to reopen be vacated, invalidating the original deportation order from 99, thereby asking us to review the order of removing him based on a drug conviction. Effectively, yes. Do you have jurisdiction to do that? Well, I'm asking you to review the motion to reopen that applied to that case. So it's not a direct review of the original deportation order, but it's a review of the motion to reopen of that deportation order. And I believe the court does have jurisdiction to review the motion to reopen, thereby returning petitioner to the status of lawful permanent resident that he had before that deportation. How do you distinguish Hernandez-Almanza? Well, two ways, Your Honor. In Hernandez, the individual in that case did not have a vacature of his conviction on its merits. In other words, the court found there was no gross miscarriage of justice because he merely had an expungement after the fact, not based on ineffective assistance of counsel, which is clearly distinct from the present case. And this court's recent decision in Areola, which we submitted in the 28-J letter, found that where there was a fundamental violation of constitutional proportion, in that case, denial of right to appeal, in this case, deportation based on unconstitutional conviction, there must be a way to challenge that initial deportation, even though the individual has been deported, or in the case, returned without inspection. The Areola says there must be a forum for reviewing that. Estrada-Rosales and Weitersberg suggest the proper forum is a motion to reopen. In the Areola case, the proper forum happened to be a habeas because of the unique jurisdictional consideration in that case. But before you've come back, before the alien has come back into the country illegally. Well, Mr. Areola did come back into the country illegally, and he did not vacate his conviction until everything hit the fan in order to start the process of vacating his conviction. And that fact did not preclude this court in Areola for finding there must be a forum to nevertheless review the validity of the initial conviction. Just one clarification. Areola didn't vacate a conviction, actually. Areola was purely a procedural error. All right. Let me ask you a different question. If I understand it right, you made the motion to reopen. It was denied. You appealed to the BIA, and then were removed again. Correct, Your Honor. And the BIA dismissed because, given the departure from the country, it deemed the appeal withdrawn. So what is it that we have to review? Why don't we just stop right there? Like the BIA did. The BIA was wrong. The BIA didn't talk – the BIA said the appeal is deemed withdrawn because Ibarra had departed the country. Correct. And so the issue hasn't been exhausted for purposes of our review. Well, actually, Your Honor, the regulation the BIA relied on, the fact that he had departed a country, is the same regulation that would normally say if you're outside the United States, you can't file a motion to reopen. But that's not what it did. You keep saying that. And you say, but that's not what happened. It deemed the appeal withdrawn. Well, based on the regulation. Sure. But in order to deem the appeal – There's plenty of law out there which says that's okay. Well, except where the deportation is an invalid one, as this Court held. Well, there's nothing invalid about this deportation that appears from this record. Well, there would be, because if the original deportation – There could be. It's all if. There's nothing in this record which shows anything improper about the deportation which led the BIA to deem the appeal withdrawn. Well, except that if the original deportation was invalid, then the individual would still be a lawful permanent resident. And – He still departed the country while his appeal was pending. Well, he didn't voluntarily depart. He would – Well, that's not part of the equation. Well, under Weitersberg, it is. Because – But you're getting to the merits now. But the merits are the same issue as the jurisdiction in this case. That's where I'm trying to focus. You keep saying that, but it's not. Because while the appeal was pending, he departed the country. Well, it's only – such a departure only removes jurisdiction to consider the appeal if the departure is legally valid. But this departure – what I'm – here's what I'm saying. I understand your position with respect to the 1999 deportation, that that is now unlawful. I understand that. Yes. But that's not the departure I'm talking about. I'm talking about the departure whenever it occurred between the time that your appeal was filed to the BIA and the time it deemed it withdrawn. There is nothing in this record that I can find which in any way suggests that that departure was unlawful. Only that there couldn't have been such a departure if he still had his lawful status. Can I ask a question? It might help a little. Thank you. The departure that caused the board to find the appeal withdrawn was effected as part of the original order, I assume. In other words, he wouldn't be – he wouldn't be removed for having reentered illegally while something was pending before the board. His removal must have been a reawakening of his original deportation. Well, the record unfortunately doesn't indicate. However, the – it is true that as a factual matter, the – that second departure was an expedited removal. Expedited removals cannot apply to lawful permanent residence. And so when he attempted to reenter the United States after the first removal, if he had been a lawful permanent resident at that time, he couldn't have been expeditedly removed, which means that second removal could never have occurred. But the second removal, I assume – maybe I'm wrong. I'd like to know what effected that second removal. In other words, he wasn't – was that second removal because he had reentered illegally or was it a summary invocation of his earlier removal? No, it was an expedited removal which happens at the border when the individual doesn't have proper visa or documents to enter. Since he was no longer a lawful permanent resident at that time, he didn't have the lawful status to enter.  As a practical matter, he was paroled in for criminal prosecution, then expeditedly removed, which is why he was physically here when we filed the motion and then was – after his release from criminal custody, he was then – the expedited removal was carried out. The record doesn't show any of that. The record does not show that. I would like to reserve some time for rebuttal. I know I'm low. Surely. Your Honors, we would ask this Court to affirm the Board's decision finding that it properly exercised its discretion in denying the motion to reopen. The key point here is on that second removal, Your Honors, because that provides an independent basis for the – for the Board to, well, dismiss the appeal. Of the – of the immigration – of the appeal of the immigration judge's denial of the motion to reopen. Independent, I guess, is the key word there. Yes, Your Honor. What's it independent of? Well, he was deported in 1999. At that time, you know, looking at his conviction, he had a valid conviction he was deported, and he chose to come back in the country illegally, which is a basis of removal. Now, he came back in illegally. The record is not clear what exactly happened, because the service couldn't, at that point, go ahead and just remove him again. There was no order. He filed this motion to reopen for the immigration judge. That was pending. It went to the Board. He filed an appeal. But the record indicates, and the Petitioner – I can see why they want to avoid this, but they did – the record does seem to suggest, administrative record at page 28 and page 49 to 50, that what happened here – and, again, it's unclear – that there was some type of summary removal, a summary order entered against them. The way that the Petitioner's administrative briefs say what probably happened was it was reinstated. That's the language that they use in their briefs that were filed before the Board. And what reinstatement is, is it's a process where, if someone is deported and comes back in illegally, they can be removed without going before an immigration judge because of the illegal reentry. Now, there's no – and there's no dispute here that he illegally reentered after his prior deportation, nor is there a dispute that this – you know, that that illegal reentry can be excused in some way. That provides an independent basis of removal. Roberts. How does a person in this kind of circumstance weave through this minefield? Somebody who's been deported based on a drug or other conviction is removed. I guess when they're out of the country, there's nothing to prevent them from hiring counsel in the country to bring a motion to vacate the conviction on which the removal is based, correct? That's right, Your Honor. And if a court then grants vacation based on a constitutional basis, what's the next proper step for the removed alien? What should that person do? Well, let me first begin by saying that they can't move to reopen, right? That's true. Because they're not here. That's true. So what's the proper thing to do? Well, let me first just say that one of the arguments that we make is that he did have time, about 8 or 9 months, between the time that he – that he was convicted and the time that he was removed, to go ahead and try to challenge that conviction. We would argue that he was on notice because when the service commenced, this was – I understand my question is hypothetical. It's not this case. I'm just curious. Yes, Your Honor. What does a person in that circumstance do? They've been removed. The conviction that was the basis for the removal has been set aside on constitutional grounds. They're outside the country. They haven't reentered. But now the basis upon which they were removed is gone. I understand, Your Honor. What's the next proper lawful step for that person to take? Well, they can certainly try to get their conviction vacated. No, no. My question assumes that that's been done. That's occurred. What's their next step with the immigration service? They can try to go to the U.S. Embassy or the consulate in the country that they're in, put forth this evidence to say that they are no longer deportable and ask that they be allowed back into the country, that the Attorney General would give them permission to reenter because of the fact that their underlying order that bars their – There's a procedure for doing that? There is – Your Honor, I'm not exactly sure what the procedure in these circumstances would be, but there's certainly a statute that says that you can, under 8 U.S.C. 1182a – I didn't mean to get you off track. Well, I just want to point that out. You've satisfied my curiosity. There's a way that someone can go to the consulate and say, allow me to reenter and present the reasons for that, A-9, and A-9, I think, within those provisions. Because there's a bar. You know, obviously, if they're deported, there's a bar. Now, they would have to go and make their case that there's no longer that bar, there's no longer that drug conviction. Your Honor, I think the key point, though, here is that that second removal, whether it was a reinstatement, as the record seems to suggest, the petitioner does not come out and say it strategically, they're not going to admit that, or whether, as they seem to admit here today, for the first time, it was an expedited removal order. And I've conferred with my counsel on this, and it seems that, again, this is not in the record, it seems that there's been both that have occurred here. There's been a reinstatement, and then there's been an expedited removal. I mean, Your Honor, this is not in the record, but, I mean, there's, you know, obviously back and forth going on here. We know this, at least, though. In the record, there's been at least one time that he's come back in illegally and been deported after that illegal reentry. And our position would be that that is dispositive, without getting into all the other issues, that that distinguishes this case from Wietesberger and Estrada-Rosales, and fits it more within the case of Hernandez-Almanza, where that is what precisely happened. And the court in, this court in Hernandez-Almanza seemed to focus on that illegal reentry. So we think that that's an important consideration. There are also, Your Honor, finality concerns that are at stake here that I'd like to point out. One of the things that we do emphasize in our brief is the timeline. And that seemed to be another consideration that sort of motivated the immigration judge to find that this case fell more within Hernandez-Almanza. Hernandez-Almanza court uses a language that the alien in that case, quote, slept on his rights. And so we would say that at some point, there has to be finality in these proceedings. Now, the other side cites the case of Areola-Areola. One of the things that they don't mention about Areola-Areola, and which the court in Areola-Areola sort of agreed with the Alvarenga court, prior decision, is that there is some finality in that case. It was a change in the law. So Mr. Areola was deported from the country for an aggravated felony, DUI, that at that time was valid under the law. Now, what he did was he came back in and he sought to challenge his prior order based on the fact that the law had changed. It's somewhat analogous to the situation here where the law hasn't changed, but his conviction has been vacated. And what the court said, really in Alvarenga mainly, and then it was sort of affirmed summarily in Areola, was that if the order is lawful at that time, at the time it was entered and executed, then you can't attack it if the alien has been deported and comes back in illegally, that there's finality concerns that are involved there. And so we would argue that the timing aspect here supports the government's position as well. Your opponent distinguished Hernandez-Almanza by saying that the vacatory there was not for a constitutional defect in the proceedings or anything. It was just sort of an expungement, perhaps because of rehabilitation. Does that make any difference? Your Honor, it does seem that the court in the two subsequent decisions pointed that out, but it also pointed out the fact that this was a case where there hadn't been an illegal reentry, that the alien had pursued his lawful recourse in that situation. I think that's really the key here, that that's the point. At some point, again getting back to finality, that you're going to have to stop these challenges to an already executed order. I think the court, as we've set forth in our brief, really focused on that. If you look at the Wietersburg decision, it says at page 1192, it says Wietersburg, on the other hand, had proceeded lawfully. So we think that... Wietersburg incidentally answers Judge Horgan's question. We said, well, they can't refuse to let him reopen if he was deported to Austria unlawfully. That's true. Even though he's still in Austria. Right. Yeah. I would just close, Your Honor, with pointing out that in his immigration proceedings, the petitioner has not claimed any defect. He was found deportable after due process hearing for the immigration charge. They now flatterly claim that that's been undermined by the years later vacature. He waived administrative and judicial review at that time. He was properly deported at the time. He illegally entered the country, and then he was properly deported a second time for the illegal reentry. Thank you, Your Honors. All right. Thank you, Counsel. Mr. Nightingale. Very quickly, Wietersburg says that there must be jurisdiction to reopen even after the deportation. And there's nothing in the regulations that says that if you come back, that also bars you from reopening. And Ariola, this Court held that there has to be jurisdiction somewhere. If it's not a motion to reopen, it's got to be on habeas. And so if this Court feels a motion to reopen doesn't lie, then the habeas has to be where jurisdiction is, and we would respectfully request that the case be transferred just as the Ariola Court did. As opposed to Hernandez-Almanza, he didn't sleep on his rights. It was only two years. He was not advised in any way of the invalidity of the conviction until he was able to have a new attorney upon his return. Okay. Thank you, Mr. Nightingale. The matter just argued will be submitted. And we'll next hear argument in Hlaing.
judges: Canby, Rymer, Hawkins